Rockingham,
　Dec., 1894.

## LADD *v.* GRANITE STATE BRICK CO.

Whether a lawful business properly conducted constitutes an actionable nuisance when injurious to another, depends upon its reasonableness under all the circumstances.

BILL IN EQUITY, filed March 26, 1892, praying for an injunction against the manufacture of bricks near the plaintiff's dwelling. Facts found by the court. In 1890, the defendants began the manufacture of bricks on their land about seventy rods from the plaintiff's house. On a few acres of the plaintiff's land, between her house and the brick-kilns, there is a natural growth of hard pine and a small percentage of white pine. At times during the burning of brick, smoke or vapor from the kilns is carried by the wind to the plaintiff's house, causing a perceptible odor that is offensive and temporarily annoying to the plaintiff. She is sixty-six years old, and has been for many years in delicate health, with a predisposition to bronchial troubles and erysipelas. She is susceptible to irritation from atmospheric changes and sensitive to any supposed invasion of her rights. The smoke or vapor carried to her house is not such in quantity or quality as to cause serious inconvenience or perceptible injury to persons of ordinary health and temperament, but the plaintiff, in her enfeebled state and nervous condition, is troubled by it. It oppresses her breathing, causes her to cough more than usual, and has a tendency to bring out erysipelas.

The foliage or needles on some of the white pines nearest to the kilns and on the side of them next to the kilns have turned to a reddish brown color, indicating decay. This discoloration was caused by the smoke or gas from the kilns. No trees have been killed. The value of the grove as a protection to the plaintiff's dwelling from winds and storms is not affected, nor is its ornamental value seriously impaired.

During the first two years, the defendants used coal dust in their kilns, which in the process of burning generated a gas that is destructive to certain kinds of trees. In August, 1892, they discarded coal, and since that time have used nothing but wood.

The defendants' use of their property is not unreasonable to the plaintiff. The damage to them from an injunction restraining the continuance of their business would be large. The damage to the plaintiff, if any, from a continuance of the business will be small and not irreparable.

*Frink & Batchelder, William L. Foster,* and *Streeter, Walker & Chase,* for the plaintiff.

*Drury & Peaslee, Calvin Page,* and *Blackmer & Vaughan* (of Massachusetts), for the defendants.

CARPENTER, J. " The maxim, *Sic utere tuo ut alienum non lœdas,*" says *Erle,* J., in *Bonomi* v. *Backhouse,* E. B. & E. 622, 643, " is mere verbiage. A party may damage the property of another where the law permits, and he may not where the law prohibits; so that the maxim can never be applied till the law is ascertained, and when it is the maxim is superfluous." The same may be said of the correlative maxim, *Qui jure suo utitur neminem lœdit.* To the proper application of either, a prior determination of the legal rights of the parties in their relation to each other is essential. Equal rights are often in conflict. One's lawful use of a public highway may seriously interfere with, or for a time wholly prevent, its use by another who has an equal right to its free and unobstructed use. While one may in general put his property to any use he pleases not in itself unlawful, his neighbor has the same right to the undisturbed enjoyment of his adjoining property. The right of each is qualified by that of the other.

Livery stables, lime-kilns, brick-kilns, butchers' shops, pigsties, tallow factories, smelting works, tanneries, noisy workshops, and various other establishments useful and necessary, but productive of more or less annoyance and injury to neighboring proprietors, may be maintained in some places and not in others, although their injurious effect upon adjacent property, and upon the personal comfort of those dwelling in the vicinity, is in each case the same. What standard does the law provide by which the business conducted in one place is declared lawful and in another unlawful?

Whatever may be the law in other jurisdictions, it must be regarded as settled in this state that the test is the reasonableness or unreasonableness of the business in question under all the circumstances. The owner may put his land or other property to any use not unlawful which, in view of his own interest and that of all persons affected by it, is a reasonable use. For the consequence to others of such a use, he is not responsible. The question of reasonableness is a question of fact. *Bassett* v. *Company,* 43 N. H. 569; *Hayes* v. *Waldron,* 44 N. H. 580; *Swett* v. *Cutts,* 50 N. H. 439; *Eaton* v. *Railroad,* 51 N. H. 504, 530-533; *Brown* v. *Collins,* 53 N. H. 442, 446-448; *Holden* v. *Lake Co.,* 53 N. H. 552; *Thompson* v. *Company,* 54 N. H. 545, 556, 559; *Garland* v. *Towne,* 55 N. H. 55, 59; *Green* v. *Gilbert,* 60 N. H. 144; *Jones* v. *Aqueduct,* 62 N. H. 488; *Rindge* v. *Sar-*

*gent,* 64 N. H. 294; *Graves* v. *Shattuck,* 35 N. H. 257, 265-268; *McIntire* v. *Plaisted,* 57 N. H. 606; *Lumber Co.* v. *Company,* 65 N. H. 290, 390-392; *Davis* v. *Whitney, ante, p.* 66.

It is found that the use made by the defendants of their land is not unreasonable to the plaintiff,—that is to say, it is not unreasonable so far as by it she is affected. It does not unreasonably interfere with or prejudice her rights. The evidence was competent and sufficient to support the finding, and it cannot be revised. By consenting to a trial by the court of the merits, the objection, that equity does not ordinarily intervene in such cases until the existence of the alleged nuisance is established at law, was waived. The case stands as if in a trial at law the jury had found against the plaintiff.

*Bill dismissed.*

BLODGETT, J., did not sit: the others concurred.